Thank you. Our next case is Avco Corporation versus Turn And Bank Holdings, number 23-1609 and 23-1705. Counsel. Thank you, Your Honors. May it please the court. Rick Matthews on behalf of Appellants, Precision Aeromotive and Turn And Bank Holdings. I'd like to reserve four minutes for rebuttal. That'll be granted. For three reasons, this court should reverse the district court's remedies decision and affirm the conditional cross appeal. First, the district court's denial of any meaningful disgorgement under Avstar and Avco's profits misapplied this court's precedent and undermined the Lanham Act's core functions and purposes of deterrence and unjust enrichment. Second, in denying Precision any recovery of profits, the court misapplied causation as a matter of law and clearly erred on the facts. And third, on the cross appeal, Avco and Avstar have supplied no basis for setting aside the jury's well-supported verdict on willfulness or reversing summary judgment. And for those reasons, this court should reverse and also should remand to the district court for reconsideration of its denial of enhanced damages, punitives and attorney's fees that were precipitated from its errors on remedies. I'll begin with disgorgement unless the court has other questions. Disgorgement in this court looks to the defendant's actions. It doesn't necessarily require harm to the plaintiff or the trademark holder in this instance. Here at the court below, there was a finding that disgorgement is warranted under equity only where Turn-and-Bank and Precision have suffered actual harm. Could I ask you to locate where in the steps of analysis you believe the error was? So at the first step, the court has to decide, is disgorgement available? Second, under the Banjo Buddies factors, my favorite case name, they examine whether it's equitable. Even though it's available, should we even go to the next step? Then the court determines at which the court found it was available. Banjo Buddies factors weighed in favor of turning toward disgorgement. So then your client met their burden by doing an accounting and saying how much the profits were, which were undisputed. And then the defendants had to try to work that number down. And then there was an ultimate, it could be rebutted and then there was an ultimate number. So where are you saying the actual damages was improperly considered? So this is the disgorgement. The disgorgement. Correct. So the disgorgement, as your honor noted, got this out of order by excluding all damages between the two co-conspirators here, the two culpable parties. The one that induced the infringement and the one that participated and sold the infringing servos to Avco. That decision preceded the Banjo Buddies analysis. So to answer your question, that initial decision by Judge Brand to exclude all remedies or damages or disgorgement of Avco and Avstar before it even engaged in the Banjo Buddies analysis we contend was the point in time where the error occurred. But- Can I, I'm sorry. I don't mean to short-circuit your question. You know, it is possible or it's possible that Judge Brand erred in what he said about disgorgement requiring actual harm. But as I read it, didn't he nonetheless do a full analysis of the six Banjo Brothers factors? Only as to third- Buddies, sorry, Buddies. Sorry. Correct. Only as to sales to third parties by Avstar, not as to the 98% of sales between the two culpable parties. So to Judge Chant's point, Judge Brand got the order incorrect and started first with an exclusion of all profits that should have been disgorged before engaging in the Banjo Buddies analysis. And thereafter then on the presumption that there must have been harm only to precision for it to have been remedied by any disgorgement, avoided looking at unjust enrichment or deterrence for those willful infringement profits that both Avco and Avstar benefited from for the six years during which the litigation proceeded. And as to the profits that your client lost- Lost profits. Lost profits. The district court concluded that they weren't entitled to any because there was no confusion, all right? As between Avco and Avstar, the two perpetrators of the infringement, correct. There was no confusion. So if there is no confusion and Avco and Avstar's profits were enhanced because there was a new competitor in the market that competed against precision, why should the mere use of your trademark entitle you to a share of their profits? Because- Through disgorgement. Sorry, Your Honor. Because it did cause confusion downstream. So this is an insulated market where you- Okay, where do you mean downstream? Explain that. So the servo manufacturer, Avstar, sells the infringing servos to Avco. Avco sells those engines to an airframe manufacturer like Cessna or Piper. That airframe manufacturer then sells those aircraft into the stream of commerce. It's at that point in time where annual- It's already in the plane. It's already in the aircraft. That's correct. All right, where's the confusion? The confusion is downstream when those servos have to be worked on, analyzed, serviced, or in any part of that life cycle, that product that lasts 12 years. None of that money came to Avco or Avstar. So why should you be entitled to a share of those downstream profits? Because it was their intent to convince the downstream market that there was no change, that it was consistent with what Precision had offered under its RSA marks. So the harm here that was done to Precision was trading on its goodwill to convince the consuming public that Mr. Kraft of Avco testified the industry doesn't like change. For consistency purposes, they wanted to maintain these same marks, and that was the benefit they gained downstream to those that utilize this. What are you asking us to do here with this equation, with this case? So the numbers are not in dispute. Right, the numbers are out there. What do you want us to do? At a minimum, we're asking the court to remand to reconsider lost profits and disgorgement. But this court is fully capable of- But I mean, disgorgement was awarded. Isn't it a wheel-spinning exercise if we send it back? I mean, the judge did consider the Banjo Brothers buddies' factors. We don't really just want to send make-work to the district court. That's why I said it at a minimum. It's our position principally that the court should reverse because it's got all the factors at hand. There's no dispute as to money. Most of the facts are not in dispute. And this court, as with other- I understand what you're saying. The third-party sales, you've got disgorgement on it. You want to get a disgorgement analysis applied to the AV Star sales to AFCA, okay? You want the Banjo Buddies factors to be applied to those profits, correct? Either that and or a lost profits calculation. So there was no confusion on lost profits. You agree there was no confusion? As between the two culpable parties who induced the infringement? No, they knew exactly the infringement they created. However, there was a mandate that the court recognized. All right, but follow my question here. Sure. If we send this back and tell the district court to do the additional Banjo Buddies analysis on the sales from AV Star to AFCA. Correct. Are you going to come out with anything? Probably not. So why have a futile exercise? That's why we've asked the court to reverse principally because the numbers aren't in dispute as to the lost profits or the disgorged profits. Well, you can't ask us to disgorge all that money. You'd be asking us to do a Banjo Buddies analysis and disgorge 100% of the money. This court has done that before. And this court and other circuit courts have where there's willful infringement, direct competition and actual confusion. They've done exactly that. In fact, there's two cases, the Marshaw case and the W.E. Bassett case that both speak to a court. Taking up the facts, most of which are not disputed and determining and reversing and then accounting for all profits, particularly where you've got willful infringement. Well, now, if we accept what you're doing, wouldn't we have to hold that there was clear error in Judge Brand's crediting AVCO's expert in economic data? Either that or finding that- A high hill to climb. It is a high hill to climb, Your Honor. We believe we've climbed that hill. But alternatively, if you find that there's an error law in the legal analysis, this court can review those factual findings for DeNova. And in either case, we believe we've met that burden. Yes, I'm surprised to hear you say that if we remanded this back to apply the Banjo Buddies factors that the result would be the same. Yes. I... Because the court had made up its mind and it was a results-based decision that we knew the court didn't like the case and wanted the parties to settle. And nonetheless, we proceeded to the- I don't know, you're a seasoned litigator. What judge doesn't want the case to settle? Fair. Fair point. And I see that I'm out of time, but I'm- Okay, we'll get you on rebuttal. Thank you. Thank you. You may proceed. Thank you, Your Honor. Good morning and may it please the court. Amy Zaharia for Apoleis, Avco and Avstar. The district court did not abuse its broad discretion in deciding Lanham Act remedies. Over two trials, the court developed an understanding of this unique industry and the party's relationship, which informed its factual findings and precision cannot show those findings are clearly erroneous. And the court correctly applied the law governing both disgorgement of profits and damages to those findings. As to disgorgement, the court did not require precision to prove actual harm to obtain disgorgement. In fact, the court ruled for precision on the question of whether disgorgement was available and appropriate. On the distinct question of how much to disgorge, the court correctly shifted the burden to Avco and Avstar to prove the profits not attributable to the infringement. And the court did not abuse its discretion in concluding that enhancing the profits award based on precision's deterrence arguments would be an improper penalty and would be inequitable. The court understood that precision's claimed harm resulted from its own business failings and from Avco's lawful decision to find a second supplier and not from the infringement. As to damages, the court correctly applied the but-for cause standard and did not apply a sole cause standard. Now, if the court were to reverse on remedies, it should also reverse the summary judgment verdict, excuse me, judgment and the willfulness verdict. Unless the court would like to start elsewhere, I'll start at disgorgement. Can we talk about disgorgement? Maybe that's where you wanted to start anyway. Yes, you are. Where is the court's discussion of unjust enrichment? Just couldn't seem to find that. Well, the court first conducted the question of how much was available to disgorge. And that analysis is set forth in the text of the Lanham Act. That's the analysis where precision first proves actual sales and then the burden shifts to Avco and Avstar to prove the deductions from sales. And the court conducted that analysis and concluded that we had carried our burden as to those two categories. Is that note 101? So that's in a footnote? No, Your Honor. It's part A of the court's disgorgement analysis. Yeah, that's where 101 is, but okay. So it starts at JA 92. And that's where the court went through the burden shifting analysis and concluded that we had carried our burden. The court then went on to assess whether disgorgement was an appropriate remedy at all. And there the court went through the Banjo Buddies factors. I think unjust enrichment is inherent in those factors where the court asked if there had been diversion of sales, for instance. Of course, if there had been diversion of sales, we would have been unjustly enriched, but the court found there was no diversion of sales. I think it is true that the court did not walk through whether there was unjust enrichment, deterrence, or actual harm as kind of one of those first three factors. Problematic? I don't think so, Your Honor, because the court ruled for precision on that question of whether to disgorge. And that's a separate question from how much to disgorge. Precision's real complaint in this case is the how much. And on the how much, the court appropriately made factual findings to support its two conclusions. As to Avco's engine sales, the court made a factual finding that Avco's engine sales have nothing to do with the model number that is on one component inside the engine. And precision has offered this court no arguments on appeal to rebut that factual finding. Well, they do argue that the post-infringing sales where the trademark was changed indicate that there was no harm because the sales increased. And they say, well, they were actually still infringing at the time because they were still using part of the RSA numbers. They removed the letters RSA, but they were still using the mark. Is that analogous to the Ellsbury-Hobbs drifters, which was found to be still infringing because it was just a tweak of the drifters trademark in Marshak? No, Your Honor, because there were two changes to the model numbers in 2018. So the first change was the prefix was changed, but then the suffix was not changed. So the five AD one that came after the dash. Well, that's the same as the drifters. They just added a prefix Ellsbury-Hobbs drifters. Right, but then there was a second change after Precision claimed that that one infringed. And the second change, both the prefix and the suffix were changed. Precision has never claimed that that model number is infringing. And the district court found that the sales continued to increase after that change as well, both sales to ABCO and sales to third parties. And the court found that that was quite instructive in concluding that the RSA model numbers was not the but-for cause of these sales. The but-for cause of ABCO's purchases from Avstar was ABCO's general desire to have a new supplier of these parts, given all of the problems that it had experienced with Precision with respect to quality, pricing, dependability, and just their general difficulty in working with them. And the court understood from that evidence that ABCO was always going to buy these servos from Avstar with or without the RSA model numbers, and the events of 2018 proved that. Now, with respect to just touching back on the issue of disgorgement, Precision points to the court's line at JA95 with respect to actual harm. And I think it's critical to point out that that line comes in the part of the court's analysis where it was discussing the burden-shifting framework. And it is crystal clear- It doesn't seem quite right, does it? Well, I think it is quite right because the district court did not say it was requiring Precision to prove actual harm. And it put the burden on ABCO and Avstar to prove the amount of profits not attributable to the infringement. And if the court looks at footnote 131 of the court's opinion, the court made crystal clear that it was disgorging profits even though Precision had not proved any actual harm. And the reason it was doing that is because of the burden-shifting framework, that the burden was on ABCO and Avstar to prove the amount of profits not attributable to the infringement. And because we couldn't carry that burden as to one category of profits, the court disgorged. I suspect if we disagree and disagree with the district court on its statement there about actual damages, that your argument is it was harmless error anyway. Yes, of course, Your Honor, because the court's attribution analysis is what drove the amount. And Precision's only complaint is really as to the amount. Now, Precision argued in its, conceded in its opening brief that the court was required to conduct this burden-shifting attribution analysis. But in its reply brief, it seemingly seems to argue that the court could just throw that analysis out the window and give whatever amount it wanted for deterrence reasons. And the court rejected that argument in the CARS for Kids case. And that's because the text of the Lanham Act and Section 1117A provides that if a court is going to enhance the amount of profits, it can do so only as compensation and not as a penalty. Judge Brand acknowledged that language in his opinion at JA-102. He understood that he could not simply enhance the profits award for deterrence reasons because deterrence is not a compensatory reason. And he found that giving Precision any more profits would be inequitable on the facts of this case, because as he found after sitting through both trials, confusion in this industry, this very unique industry, was very unlikely. He found that Precision had offered no evidence whatsoever of any purchase confusion, none. And that's for a good reason. It's because under federal law, purchasers of these specialized parts need to use the part number and not the model number to buy a part. There's no evidence of any actual confusion. And as to Precision's other evidence of this supposed downstream confusion, Judge Brand found after the two trials that that evidence was quite weak and that confusion among these mechanics who are trained to interpret the information on the data plates was very unlikely. And so for that reason, the court found that this was the equitable amount of profits to discharge. Go back a step. How do you say that the court analyzed the deterrence factor? The court expressly discussed deterrence as part of its Banjo Buddies analysis. It only applied it to the sales to third parties, correct? Well, yes, but that's because the court had already conducted the analysis of how much in profits was available under the burden shifting framework. But obviously the numbers are agreed to. The numbers are in the record and they're agreed to. And your clients made profits from the sales that were involved here. If in fact, under our precedent, the court should have applied the deterrence factor to those sales, would you agree that that's an error of law? No, because not one that would require reversal here because the next step, so let's say the court did that. And let's say the court applied the Banjo Buddies factors and said, yes, deterrence is an appropriate, or excuse me, disgorgement is an appropriate remedy. That's what it held, it did hold that. The next step would be to calculate how much. And the how much is not tied to deterrence. The how much is tied to the burden shifting framework set out in the Lanham Act that the court conducted. And when the court conducted that analysis, the result was $264,000. And precision can't identify any case that requires a court to do those in any particular order. The outcome would be the same in this case, no matter which order the court had conducted that analysis. We just know the order the court wrote it down in its opinion, but the court, those are two distinct analyses. And on the amount, they cannot show any legal error as to the court's application of the burden shifting framework to calculate the amount. Now, just touching very briefly on the issue of the lost profits damages, I think precision's only argument relates to the contract and the argument that somehow, because there was a contract that identified the part number or the model numbers that required a finding but for causation, they presented that argument to Judge Brand. He rejected that argument. He understood from all the evidence that the parties were going to use Avstar servos with or without the RSA model numbers. And that's because for all the reasons that I already discussed, there were many requirements in that contract, but no one would think that the requirements in the contract were themselves, but for causes of the parties deciding to enter that contract in the first place. Can I ask you a question? It has to do with your conditional cross appeal. I'm wondering just how conditional it is. Maybe you could clarify the scope. If we affirm, I get it. What if we vacate, say, disgorgement and send it back? Then what? Then it's in play? Yes, and it's in play, Your Honor. Okay, so anything short of a straight out affirm, you want us to take up your arguments? Yes, Your Honor. Now, as to the cross appeal, I would note it's conditional only because this case has been pending for 12 years. We are not using these RSA model numbers anymore, and we are eager to move on. But we firmly believe- You guys were so eager, you would have settled it, but there you go. We're still here, Your Honor. And we firmly believe the district court erred in granting summary judgment and erred at the willfulness trial. As to summary judgment, all of the issues on which the court entered summary judgment are fact-intensive issues on which summary judgment is disfavored. And that is all the more true here because precision concedes these model numbers have descriptive meaning. At best, they can only be descriptive marks. And that is relevant to all of the various summary judgment analyses. I'm not gonna touch on each of the summary judgment issues, but let me just highlight three kind of cross-cutting factual issues for the court. First, how- I know one of the things you pointed out was the lap factors regarding secondary meaning. Yes, Your Honor. The court did not consider all the factors, I guess. Yes, exactly, Your Honor. And there are multiple factors here from which a jury could conclude that these model numbers either were generic or lacked secondary meaning. And certainly, in this very sophisticated industry, there would be no likelihood of confusion. In fact, after trial, after the court saw the evidence live, the court concluded that confusion was very unlikely, which I think is a good sign that there is something wrong with the court's summary judgment ruling on likely confusion. There's at least a dispute of fact as to whether sophisticated mechanics who are trained to interpret this information would be confused. There's at least an issue of fact as to how this unique industry understood the RSA model numbers and whether they understood them to identify a source or just a product. And there's at least an issue of fact as to what Avco and AppStar's intent was in using these model numbers at a time when they were not registered trademarks and we did not understand them to be trademarks. So unless the court has further questions, we urge the court to affirm. Thank you. Thank you. Your rebuttal. Thank you. Thank you, Your Honors. I wanna touch on just a couple of points. To Judge Chunk's point about the additional infringement in the Marshak case, that's exactly what happened here. There was no injunctive relief and there was no disgorgement or any remedies provided between the two co-conspirators in this case. That's significant. You've got willful infringement, actual confusion and direct competition. And there's not a single nickel attributed to any of Avco's profits when it induced this infringement. That's clear error. Why did they otherwise want to use these trademarks? Why did they bring this lawsuit and drag my smaller client through a decade of litigation if they had no value? And to Judge Fisher's point on the deterrence issue, the court did not touch general deterrence. It's absent. It spoke only of specific deterrence against Avco opining they won't infringe again, ignoring clear error that they had already infringed a second time and forced my client to go litigate in another court, spend more money and to get a preliminary injunction. This case begs for a deterrence remedy far greater than what was given, at least with regard to disgorgement. And apportionment is entirely separate from the unjust enrichment in this case. But the court's decision ties apportionment directly to causation. That's an error of law. While both sides agree that the lower court erred, we disagree as to how. The facts largely aren't in dispute. As the court noted, the numbers aren't in dispute. And similar with W.E. Bassett and,  out of the Eighth Circuit, equity requires that all of the profits from the sales of the willfully infringing use of the marks should be disgorged. We ask for a reversal of the disgorgement decision and a finding that the profits made by the two willful co-infringers be disgorged in their entirety, consistent with W.E. Bassett and the Marshok case. And remand the case back for further proceedings on the remaining remittance. Thank you, counsel. Thank you. We thank counsel for their excellent briefing in this case and their excellent oral arguments. We'll take the case under advisement and like.